IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EASY SPORTSWEAR, INC.,          )
                                )
            Plaintiff,          )
                                )
    vs.                         )          Civil Action No. 05-1183
                                )
AMERICAN ECONOMY INSURANCE      )
COMPANY, a corporation,         )
                                )
            Defendant.          )

## MEMORANDUM OPINION

This case stems from damage to Plaintiff's property located at 819 Liberty Avenue,

Pittsburgh, Pennsylvania, allegedly caused by "Hurricane Ivan" on or about September 17, 2004.

For the reasons set forth below, this Court finds that genuine issues of material fact remain as to

coverage of Plaintiff's insurance claim but that no genuine issues of material fact remain as to the

issue of bad faith. As such, Plaintiff's Partial Motion for Summary Judgment [DE 30] is denied and

Defendant's Motion for Summary Judgment [DE 32] is granted in part and denied in part.

## PROCEDURAL BACKGROUND

On July 14, 2005, Plaintiff Easy Sportswear, Inc. instituted this action against its insurer

Defendant American Economy Insurance Company in the Court of Common Pleas of Allegheny

County, alleging common law breach of an insurance contract and bad faith under Pennsylvania

statutory law.[1]  On August 18, 2005, this case was removed to this Court.  (Docket No. 1).  On

---

[1]

    In its original Complaint, Plaintiff named Safeco Insurance Company of America as the only defendant.  On
October 24, 2005, Plaintiff filed a Consented to Motion to Amend Caption and Substitute Party Defendant, in which
Plaintiff requested that the Court substitute American Economy Insurance Company for Safeco Insurance Company of
America.  On November 2, 2005, the Court granted Plaintiff's Motion by dismissing without prejudice Safeco Insurance

September 1, 2006, Plaintiff filed a Motion for Partial Summary Judgment as to coverage and Defendant filed Defendant's Motion for Summary Judgment as to coverage as well as Plaintiff's bad faith claim. On September 28, 2006, Defendant filed a Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment. At that time, Plaintiff did not file a response to Defendant's motion for summary judgment.

On April 27, 2007, the instant case was reassigned to the undersigned Judge. On May 18, 2007, this Court set this matter for a status/settlement conference for June 19, 2007, at which the Court discussed the status of the case and inquired as to whether pending dispositive motions were ripe for disposition or whether the parties required additional discovery. The Court instructed counsel for the Plaintiff to notify the Court by June 20, 2007, as to whether he required further discovery. Based on the Court's discussion of the case with the parties, the Court did not engage in settlement negotiations. (*See* Docket No. 40).

On July 17, 2007, Plaintiff filed a Motion Regarding Discovery, in which Plaintiff requested leave to take the deposition of Morris Gabbay, principal of Plaintiff Easy Sportswear. On July 18, 2007, the Court granted Plaintiff's motion allowing it leave to take the deposition of its principal, given his residence in Israel. On September 10, 2007, Plaintiff deposed Mr. Gabbay.

On October 3, 2007, Plaintiff filed a Concise Statement of Material Facts, attaching the deposition of transcript of Mr. Gabbay. (Docket No. 45). On October 4, 2007, Defendant filed its Concise Statement of Material Facts in Support of Defendant's Motion for Summary Judgment as well as an Appendix thereto. (Docket No. 46). On October 5, 2007, Defendant filed Response of

Company of America and substituting American Economy Insurance as the sole defendant in this action. (*See* Docket No. 6).

Defendant American Economy to the Concise Statement of Material Facts. (Docket No. 48). On October 8, 2007, Plaintiff filed another Concise Statement of Material Facts, in which it noted a minor typographical error in its previous Statement. (Docket No. 49). Finally, on October 23, 2007, the Court noted (via minute entry) that counsel for the Plaintiff represented to the Court that he does not intend to file an errata sheet as to Mr. Gabbay's deposition nor file any additional briefs.

Accordingly, the Court finds that the instant motions are now ripe for disposition.

## FACTS

Plaintiff, at all times relevant to this action, was a Pennsylvania corporation operating retail clothing stores in Pittsburgh. The sole stockholder of the corporation, Morris Gabbay, also owned other corporations operating retail clothing stores in Pittsburgh, including Gabbay Company, which operated a store located at 819 Liberty Avenue in Pittsburgh. (Docket No. 45, Exh. 1, at 31). Gabbay personally purchased the building located there in 2000. (Docket No. 45, Exh. 1, at 32, 43). Several of the upper floors of the building were used as a warehouse for Gabbay's other businesses, including Plaintiff. In particular, Gabbay used the fifth and sixth floors of the building as a storage area for inventory owned by Plaintiff. (Docket No. 45, Exh. 1, at 38). This inventory included urban style clothing, shoes, and coats from various designer manufacturers. (Docket No. 45, Exh. 1, at 38-39).

In November 1999, Plaintiff purchased a business owners insurance policy, at policy number BP 00 03 07 02, from Defendant through one of Defendant's local agents, which Plaintiff renewed on a yearly basis (Docket No. 1, at ¶ 3). The policy (the terms of which are discussed in detail below) was in effect from November 1, 2003 through November 1, 2004. (*Id.*, at ¶ 4).

On Friday, September 17, 2004, tropical storm "Hurricane Ivan" caused serious weather

conditions in Allegheny County, including "severe storms, heavy rains, high winds and flooding". (Docket No. 30, Exh. B). On that date, Governor Edward G. Rendell declared a state of disaster emergency for Allegheny, Armstrong, Butler and Washington Counties in Western Pennsylvania. (*Id.*). Total rainfall in the city of Pittsburgh on that day ranged from a total of 5.5 to 6.0 inches. (Docket No. 34, Exh. C., at 2). Plaintiff alleges that, on September 17, 2004, Plaintiff's employee noticed rain coming through the roof of the building at 819 Liberty Avenue, causing Plaintiff's inventory located on the sixth floor of the building to be damaged by water. (Docket No. 45, Exh. 1, at 14). Approximately four months thereafter, Plaintiff reported the loss of the damaged inventory to Defendant, seeking coverage for business personal property under the business owners insurance policy. Defendant responded with a prompt reservation of rights letter dated January 19, 2005, providing the following: "There is a question whether coverage under the policy applies to this loss." (Docket No. 32, Exh. B, at 1). Specifically, Defendant relies on the following provisions of the policy as a potential basis for the denial of coverage: the definition of coverage, exclusions as to cause of loss, and property loss conditions including duties of the insured in the event of loss or damage and legal action against the insurer. (*See* Docket No. 32, Exh. B, at 1-2). Furthermore, the letter provides that "[t]here may be other reasons why coverage is in question. We do not waive our right to deny coverage for any other valid reason that may arise." (Docket No. 32, Exh. B, at 3).

Thereafter, Defendant hired Castle Claims Service, Inc., an adjusting firm, to investigate Plaintiff's claim. On January 24, 2005, Joe McAndrews, an adjuster from Castle Claims, inspected the roof of the 819 Liberty Avenue building. (Docket No. 46, at ¶ 7). Defendant subsequently hired a roofing consultant, Norman Olszewski of H.D. Independent Restoration, to inspect the roof. (*Id.*, at ¶ 9). By letter dated February 28, 2005, Defendant denied coverage of the damaged inventory,

finding that, based upon the opinions of the insurance adjuster and roofing inspector, the loss of the inventory was not due to storm related damage and therefore not covered under the policy. (*See* Docket No. 32, Exh. E) ("[The roofing consultant] determined that rain water came in through the roof due to the fact the roof is worn out and deteriorated. Neither the [roofing] consultant nor the Independent Adjuster could find any storm related damage that would have caused the roof to leak").

## STANDARD

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Woodside v. School Dist. Of Philadelphia Bd. Of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001) (quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted)). In deciding a summary judgment motion, the court must "view the evidence...through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242,247 (3d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a motion for summary judgment, *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255 (1986)); s*ee also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (providing that "a court must take the facts in the light most favorable to the nonmoving party, the [plaintiffs], and draw all reasonable inferences in their favor") (citation omitted)).

## ARGUMENTS PRESENTED

In its motion for partial summary judgment, Plaintiff asserts that its claimed property constitutes "covered property" as defined in the policy and that the limitations and exclusions asserted by the Defendant do not apply here. Thus, Plaintiff requests that the Court enter partial summary judgment in its favor on the issue of "liability for the damage to Plaintiff's business

personal property, if any, that occurred on September 17, 2004, but reserving all damage issues for trial." (Docket No. 30, at 5).

In its motion for summary judgment, Defendant offers the following arguments:

> (1) the definition of 'water damage' in the coverage form does not afford insurance for the claims plead in the Complaint; (2) the policy limitation requiring structural storm damage has not been satisfied; (3) the alleged claim is expressly excluded as resulting from risks of 'wear and tear', 'decay', 'deterioration', and 'settling [and] cracking'; (4) Plaintiff's failure to uphold [its] duties in the contract for insurance is a basis to deny Plaintiff's claim for coverage and constitute a waiver of Plaintiff's right to institute legal action against Defendant; [and] (5) the Defendant did not deny the Plaintiff benefits in bad faith because it had a reasonable basis to deny such benefits.

(Docket No. 33, at 5).

The Court will address the parties' dispositive motions in the following manner: (1) coverage and (2) bad faith.

## ANALYSIS

As a preliminary matter, the Court notes that jurisdiction in this case rests on the diversity of the parties. 28 U.S.C. § 1332(a)(1). A federal court sitting in diversity must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including its choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220 (3d Cir. 2007) ("A federal court exercising diversity jurisdiction must apply the choice of law rule of the forum state"). While Plaintiff raises choice of law in its motion asserting that Pennsylvania law applies here, (*see* Docket No. 31, at 2), Defendant does not address choice of law but exclusively cites and relies upon Pennsylvania law in its brief. As there does not appear to be any dispute that Pennsylvania law applies to this case and the insurance policy in

question is silent as to the applicable state law, (*see* Docket No. 1, Exh. A), the Court declines to engage in a choice of law analysis. *Rochez Bros., Inc. v. North American Salt Co., Inc.*, Civ. A. No. 94-1131, 1994 WL 735932, at *6 n.8 (W.D. Pa. 1994) (citing *Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("Because the parties appear to implicitly agree on the applicable choice of law, this Court will not challenge their decision"); *see also McMahon v. State Farm Fire and Cas. Co.*, Civil Action No. 06-3408, 2007 WL 1377670, at *3 (E.D. Pa. May 8, 2007) (noting that "[t]he [choice-of-law] question is irrelevant in this action as the parties have relied primarily on the laws of the Commonwealth in their pleadings, and have not raised an objection to the application of Pennsylvania law. Therefore, I will consider the parties to have waived any objections to the application of Pennsylvania substantive law) (citation omitted).

The Court now turns to the substantive issues in the pending motions, i.e., coverage and bad faith.

I.     *Coverage*

Under Pennsylvania law, interpretation of an insurance contract is a question of law that is properly decided by the court. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895 (3d Cir. 1997); *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330 (3d Cir. 2005). In interpreting the insurance contract, if the terms of the policy are clear and unambiguous, the general rule is to give effect to the plain language of the agreement. *Reliance Inc. Co.,* 121 F.3d at 900; *Bensalem Twp. v. International Surplus Lines Ins. Co.,* 38 F.3d 1303 (3d Cir. 1994). An ambiguity exists where there is more than one possible interpretation or if the contract is susceptible to more than one possible construction. *Medical Protective Co. v. Watkins*, 198 F.3d 100 (3d Cir. 1999); *McMillan v. State Mut. Life Assur. Co. of America*, 922 F.3d 1073 (3d Cir. 1990). When an ambiguity exists in a provision of an

insurance policy, the provision must be construed in favor of the insured against the insurer. *Medical*

*Protective Co.*, 198 F.3d at 103. Furthermore, "Pennsylvania case law ... dictates that the proper

focus for determining issues of insurance coverage is the reasonable expectations of the insured."

*Reliance Ins. Co..*, 121 F.3d. at 903.

A.      Plaintiff's motion for partial summary judgment

In its motion for partial summary judgment, Plaintiff argues that it is entitled to coverage

under the terms of the policy. (Docket No. 31).   Generally, Plaintiff's motion responds to and

addresses the policy provisions raised in Defendant's February 28, 2005 letter denying coverage to

Plaintiff's property.  (Docket No. 31, at 4).   Specifically, Plaintiff argues that: (1) Defendant has

misinterpreted the provisions on which it relied in denying Plaintiff coverage; and (2) there are

several policy provisions, under which, Plaintiff argues, it is entitled to coverage.  In its motion,

Plaintiff methodically proceeds through pertinent sections of the insurance policy in order to

establish as much, and the Court shall do the same.

The "Businessowners Coverage Form" (BP 003 0702) provides the following parameters as

to "coverage":

>   **A.      Coverage**
>
>   We will pay for direct physical loss[2] of or damage
>   to Covered Property at the premises described in
>   the Declarations[3] caused by or resulting from any
>   Covered Cause of Loss.

---

[2]

The Court notes that the policy does not contain a definition of "direct physical loss."

[3]

The Declaration sheet defines the premises as Easy Sportswear, Inc., 819 Liberty Avenue, Pittsburgh, Pennsylvania, 15222.  It also reflects a policy period of November 1, 2003 to November 1, 2004.  The instant loss occurred within the policy period on September 19, 2004.

(Docket No. 32, Exh. F1, at 1) (emphasis in original).

Immediately following the property insuring agreement, the policy breaks down coverage into two categories: covered property and property not covered. In turn, "covered property" likewise separates into two categories: buildings and business personal property. Relevant here, the policy provides the following description as to business personal property:

> **b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described prem- ises, including:
>
> **(1)** Property you own that is used in your business ...

 (Docket No. 32, Exh. F1, at 1) (emphasis in original). Here, Plaintiff's inventory plainly constitutes property that is owned by or used in Plaintiff's business. Therefore, Plaintiff's claimed inventory constitutes business personal property as defined in the policy and, therefore, said inventory is potentially covered under the policy.[4] Accordingly, damage to Plaintiff's claimed inventory may be covered if said damage was "caused by or resulting from any Covered Cause of Loss", (Docket No. 32, Exh. F1, at 1).

 Under the property insuring agreement, Plaintiff's property is potentially covered if it is a "direct physical loss." Here, the Court finds that the loss, i.e. water damage to inventory, claimed by Plaintiff constitutes physical damage to business personal property. Under the plain meaning of these terms, Plaintiff has a physical loss that is potentially covered under the policy as long as said

---

[4]
Furthermore, the Court notes that Plaintiff's claimed property does not fall into any of the categories delineated under "property not covered" and neither of the parties argue as much.

physical loss is "direct". However, because the insurance policy does not define "direct physical loss", the Court must use the plain and ordinary meaning of the words in order to interpret this provision. *McMahon v. State Farm Fire and Cas. Co.,* Civil Action No. 06-3408, 2007 WL 1377670, (E.D. Pa. May 8, 2007) (citing Black's Law Dictionary to define words and phrases not defined by the insurance contract). The plain meaning of "direct" is "free from extraneous influence; immediate." *Black's Law Dictionary* (8th ed. 2004); *See also Black's Law Dictionary* 429 (2d pocket ed. 2001) (defining "direct loss" as "[a] loss that results immediately and proximately from an event"). Furthermore, any ambiguity in the meaning of "direct physical loss" must be construed against Defendant, *see Medical Protective Co.*, 198 F.3d at 103, and the effect thereof given to the reasonable expectations of Plaintiff, *see Reliance Ins. Co.,* 121 F.3d at 903. Here, Plaintiff alleges that physical damage resulted to Plaintiff's property directly from rain water entering through the roof of the building. Accordingly, the Court finds that Plaintiff's allegations demonstrate a "direct physical loss."

Plaintiff's claim will be covered, so long as the loss is "caused by or resulting from any covered cause of loss." (Docket No. 32, Exh. F, at 1). Under "Covered Causes of Loss", the policy states that risks of direct physical loss will be covered unless the loss is excluded or limited.[5] In other words, Plaintiff's claimed inventory (in the form of business personal property), allegedly damaged by water that entered through the roof of the building, will be covered unless the cause of

---

[5]

Verbatim, the policy defines "covered cause of loss" as:

> Risks of direct physical loss unless the loss is:
> **a.** Excluded in Paragraph **B**. Exclusions in Section **I**; or
> **b.** Limited in Paragraph **4**. Limitations in Section **I.**

(Docket No. 32, Exh. 9, at 2) (emphases in original).

the loss is excluded in paragraph "B. Exclusions in Section I", (Docket No. 32, Exh. F4, at 13), or

limited in paragraph "4. Limitations in Section I", (Docket No. 32, Exh. F1, at 2). In its motion,

Plaintiff addresses possible exclusions and limitations, specifically (1) the limitation relating to "the

interior of any building or structure"; (2) the exclusion relating to water as a cause of loss; and (3)

the exclusion relating to "wear and tear".

The Court first turns its attention to the exclusion relating to water as a cause of loss and

finds said provision inapplicable here. It will then address the remaining provisions in its discussion

of Defendants' Motion herein.

The "water" exclusion provides that coverage will be excluded for "loss or damage caused

directly or indirectly" by water.[6]  The policy then defines "Water" at paragraph **g**, (Docket No. 32,

Exh. F4 , at 14), in pertinent part as:

> (1) Flood, surface water, waves, tides, tidal waves, overflow of any
> body of water, or their spray, all whether driven by wind or not ... .[7]

---

[6]     Verbatim, the policy defines exclusions:

**B.     Exclusion**s

**1.**     We will not pay for loss or damage caused
directly or indirectly by any of the following.
Such loss or damage is excluded regardless
of any other cause or event that contributes
concurrently or in any sequence to the loss.
These exclusions apply whether or not the
loss event results in widespread damage or
affects a substantial area.

(Docket No.  32, Exh.  F4, at 13) (emphasis in original).

[7]     The rest of the definition reads as follows:

**g.     Water**
**(2)**     mudslide or mudflow;
**(3)**     Water that backs up or overflows
from a sewer, drain or sump; or

*Id.*

Noticeably missing from the descriptive wording in this provision, however, is "rain." Furthermore, none of the terms of this provision have been defined to include rain itself under either the plain meaning of the terms of the policy or Pennsylvania law. *See T.H.E. Ins. Co. v. Charles Boyer Children's Trust*, 455 F.Supp.2d 284, 296 (M.D. Pa. 2006) (providing that "surface water" is not interpreted to include rain coming through the roof of a building: "As explained by the Pennsylvania Superior Court, surface waters are 'commonly understood to be waters on surface of ground, usually created by rain or snow, which are of casual or vagrant character, following no definite course and having no substantial or permanent existence'") (quoting *Richman v. Home Ins. Co. of N.Y.*, 94 A.2d 164, 166 (1953) (citation omitted)). Construing the provisions of the policy in favor of the insured, as this Court is required to do, *Medical Protective Co.*, 198 F.3d at 103, because the policy does not explicitly include "rain", under the canon of construction, *expressio unuis est exclusio alterius*, the Court does not interpret this "water" provision to include rain. Hence, the Court finds that this exclusion does not apply to the facts at hand.

The Court now turns to Defendant's arguments advancing potentially applicable exclusions.

B.     Defendant's motion for summary judgment

Defendant asserts the following arguments in support of its contention that, as a matter of law, Plaintiff's claims should be denied coverage under the terms of the insurance policy because:

---

**(4)**     Water under the ground surface pressing on, or flowing or seeping through:
(a) Foundations, walls, floors or paved surfaces;
(b) Basements, whether paved or not; or
(c) Doors, windows or other openings.

(Docket No. 32, Exh. F4, at 15) (emphasis in original). The Court finds that these definitions of water are, on their face, inapplicable here.

(1) the definition of 'water damage' in the coverage form does not afford insurance for the claims plead in the Complaint; (2) the policy limitation requiring structural storm damage has not been satisfied; (3) the alleged claim is expressly excluded as resulting from risks of 'wear and tear', 'decay', 'deterioration', and 'settling [and] cracking'; [and] (4) Plaintiff's failure to uphold [its] duties in the contract for insurance is a basis to deny Plaintiff's claim for coverage and constitute a waiver of Plaintiff's right to institute legal action against Defendant ... .

(Docket No. 33, at 5). In Pennsylvania, the insurer bears the burden of proving that an exclusionary provision is applicable to the case. *Daburlos v. Commercial Ins. Co. of Newark, New Jersey,* 521 F.2d 18 (3d Cir. 1975). With this burden in mind, the Court addresses each of Defendant's arguments in turn.

*1. Water damage*

The Court turns first to Defendant's argument that Plaintiff's claim for coverage for loss of the business personal property at issue was not water damage contemplated by the policy, and therefore was properly denied. (Docket No. 34, at 9). Under Section I. Coverage, H. Property Definitions, 11. "Specified Cause of Loss", the policy defines "specified cause of loss" as including:

accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

(Docket No. 32, Exh. F6, at 5). Based on the above definition, Defendant maintains that the subject occurrence covering water damage does not apply because it does not, on its face, include coverage for damage caused by rain entering the building.

However, the Court notes that there is potential coverage for the loss of Plaintiff's inventory elsewhere in the policy under "Covered Property" and "Covered Cause of Loss". More specifically,

as discussed above, these provisions provide coverage for "direct physical loss" to business personal property, unless said loss is either limited or excluded elsewhere in the policy.[8]

### 2.     *"Interior of the building"*

Defendant argues that the policy limitation requiring structural storm damage has not been satisfied here.  Specifically, Defendant relies upon the following limitation:

> We will not pay for loss or damage to:
>
> **(5)** The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
> > **(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters ... .

(Docket No. 32, Exh. F1 , at 2-3) (emphases in original).

However, the Court finds that this provision is inapplicable here.  In the Court's view, the

---

[8]

    The Court notes that there are other potentially applicable provisions in the policy not raised by Defendant in its Reservation of Rights letter, letter denying coverage, or its motion for summary judgment.  Subsequent to Plaintiff's claim for loss, Defendant sent Plaintiff a reservation of rights letter, stating that there was a potential reason for denying coverage based on Plaintiff's failure to fulfill certain duties under the policy.  The reservation of rights letter also states that Defendant does not waive its right to deny coverage on other grounds.  In Pennsylvania, an insurer reserves its right to deny coverage on other grounds. SUMMARY OF PENNSYLVANIA JUR, 14 Pa. Summ Jur. 2d. Ins. § 10:27, noting *Beckwith Machinery Co. v. Travelers Indem. Co.,* 638 F.Supp. 1179 (MD. Pa. 1986); NORTON ON INSURANCE COVERAGE IN PENNSYLVANIA, 2d Ed. § 1.C(1).  Therefore, Defendant did not waive its right to deny coverage to Plaintiff on other grounds or pursuant to other provisions of the insurance policy.  Furthermore, in the instant motion, Defendant notes that it "raised additional defenses in the pleadings, which it hereby reserves."  (Docket No. 33, at 5).

    Specifically, the Court notes the potential applicability of the following: (1) the exclusion under "Other Types of Loss", which excludes coverage for loss or damage to personal property caused by or resulting from "[d]ampness or dryness of atmosphere", (Docket No. 32, Exh. 12, at 4); (2) the exclusion under "Weather Conditions", which excludes coverage for loss or damage caused by or resulting from said weather conditions, however "this exclusion only applies if weather conditions contributed in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage", (Docket No. 32, Exh. 13, at 1) (emphasis in original); and (3) the exclusion under "Negligent Work", which excludes coverage for loss or damage caused by or resulting from said negligent work, which is defined as "[f]aulty, inadequate or defective ... [d]esign, specifications, workmanship, repair, construction, renovation, or remodeling", (Docket No. 32, Exh. 13, at 1).

plain meaning of "interior" of a building is the actual physical interior of the building, not business personal property (i.e., inventory) located inside the building.[9] *See Calvert Ins. Co. v. Herbert Roofing and Insulation Co.,* 807 F.Supp. 435 (E.D. Mich. 1992) (noting that "interior" of the building included real property or fixtures to real property, "The water that made its way through the roof caused damage to the interior of the school building (e.g. ceiling tiles, light fixtures, lockers, flooring, etc.")). Here, as noted above, Plaintiff's claimed loss is based on damage to inventory, or business personal property, located inside the building, not the interior of the building itself. Giving effect to the plain language of the provision, the Court interprets this provision as limiting coverage on the actual interior of the building damaged by the causes listed therein. Therefore, the Court finds that this limitation is not applicable to the business personal property claim here and hence, Plaintiff's potential coverage is not limited by said provision.[10]

> *3. Other types of loss*

Defendant further argues that Plaintiff's claim is excluded as resulting from "wear and tear", "decay", "deterioration", and "settling and cracking". The potentially applicable exclusion is defined as:

> **B. Exclusions**
>
> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless

---

[9]

Furthermore, considering the plain meaning of the words "interior of the building" and the reasonable expectations of the insured, *see Reliance Ins. Co..,* 121 F.3d. at 903, Plaintiff could reasonably expect "interior of any building" to mean the actual physical interior of the building, and not personalty located within the building.

[10]

At this point, the Court notes that because none of the other specified limitations under paragraph 4.1 apply here (and Defendant does not argue the applicability of any other limitations), the Court now turns to the potentially applicable exclusions to coverage listed under paragraph B.1.

of any other cause or event that contributes
concurrently or in any sequence to the loss.
These exclusions apply whether or not the
loss event results in widespread damage or
affects a substantial area . . .

**l. Other Types of Loss**

**(1)** Wear and tear;
**(2)** Rust, corrosion, fungus, decay, deterioration, hidden or
latent defect or any qualify in property that causes it to
damage or destroy itself;
**(3)** Smog;
**(4)** Settling, cracking, shrinking or expansion ... .

(Docket No. 32, Exh. F3, at 4) (emphases in original). In other words, this provision excludes

coverage for loss or damage caused by or resulting from any of the above, regardless of any

concurrent cause.

Defendant argues that damage to Plaintiff's property was caused by or resulted from the worn

out condition of the roof of the building. Specifically, Defendant offers affidavits of the insurance

adjuster and roofing inspector, both of whom agreed that there was long term water damage to the

roof and that the roof was in a worn out condition. (Docket No. 33, Exhs. C and D). On the

contrary, Plaintiff argues that damage to the property was caused by rain coming through the roof,

and further offers testimony that the damage was not caused by a leak in the roof, as Defendant

suggests, but that the roof in question was serviceable and the cause of the damage was a rain storm

entering the intact roof. (Docket No. 45, Appendix 1, at 13-18). Furthermore, Plaintiff's principal,

Gabbay, stated in his deposition that there had been a minor leak in a different area of the roof than

where the rain entered in the past that he had personally fixed and that, after patching the roof, there

was no further damage to the roof or leaks (i.e., there was no "wear and tear" at the area of the

building where the water entered on September 17, 2004). (*Id.,* at 13).

Here, turning to the alleged cause, there is a genuine issue of material fact as to the actual cause of loss. Plaintiff contends that the cause of the damage was direct damage from an isolated incident of severe weather and, therefore, should be considered a cause of loss under the terms of the agreement. Defendant argues that the cause of the damage to Plaintiff's property was a previously damaged roof, i.e., wear and tear and failure to properly maintain the roof, which Defendant contends is excluded by the policy and that any alleged damage done by the storm acted concurrently with an excluded cause of loss. In the Court's view, a genuine issue of fact exists here precluding the Court from deciding the applicability of the above exclusion regarding the cause of loss, i.e., storm and rain water versus the roof. Whether the rain storm on September 17, 2007 was the cause of damage, or whether the condition of the roof was the cause or a concurrent cause of loss is a question of fact for the jury to determine. Because both sides proffer evidence in support of their arguments, in order for the Court to determine whether this exclusion applies, there must be a finding of fact to determine the actual cause or causes of loss before the Court can determine whether or not the policy excludes Plaintiff's loss under the policy.[11]

    4.    *Plaintiff's duties under the policy*

---

[11]

    In its brief, Defendant relies upon *Bashir v. American Economy Insurance Co.*, 98 Fed.Appx. 928 (3d Cir. 2004), wherein the Third Circuit upheld the district court's ruling that damage to rugs inside a merchant's building were caused by a deteriorated, leaking roof and therefore excluded under a policy identical to the policy at issue here. However, the Court first notes that, as to the issue of the applicability of the section excluding damage to property inside the building resulting from wear and tear of the roof, the plaintiff in that case conceded, on appeal, that the district court was correct in finding that this exclusion applied to plaintiff's loss. Furthermore, the Court finds the instant case distinguishable, insofar as in *Bashir*, the district court found no issue of fact as to whether or not the cause of damage to Plaintiff's property resulted from a damaged roof. In this case, the Court finds that there were extraordinary circumstances not present in *Bashir*, namely, inordinately heavy rains, that alone could have conceivably caused water to come through an intact roof and caused damage to property inside the building. Therefore, this Court finds that *Bashir* is factually inapposite and that issues of fact as to the cause of loss/damage remain here.

Defendant further argues that Plaintiff's failure to conform to its duties under the policy constitutes a basis to deny Plaintiff's claim for coverage and a waiver of Plaintiff's right to institute legal action against Defendant. (Docket No. 33, at 13-15).

The policy specifies duties imposed upon the insured when making a claim under the policy. In particular, Defendant relies on "Duties In The Event Of Loss Or Damage" under "Property Loss Conditions", which provides:

> a. You must see that the following are done in the event of loss or damage to Covered Property:
> ...
> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I- Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(Docket No. 32, Exh. F5, at 19). Relying on the above sections, Defendant contends that Plaintiff failed to provide notice of the claim to Defendant for approximately four months after the date of the alleged damage on September 17, 2004, i.e., in or about January 2005. Defendant also contends that Plaintiff failed to meet its duty to preserve the property, and therefore, Plaintiff's claim is excluded from coverage. Specifically, Defendant relies on the section entitled "Neglect", which provides that "[n]eglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss." (Docket No. 32, Exh. F4, at 16). Defendant argues that

Plaintiff neglected the inventory within the meaning of this provision of the policy by allowing the goods to remain stored under the leaking roof and to become moldy. (Docket No. 33, at 14). Thus, according to the Defendant, Plaintiff failed to fulfill its duties under the insurance contract and thus Plaintiff's claim is barred.[12]

First, as to Plaintiff's duties under the contract, according to Mr. Gabbay's deposition testimony, on September 17, 2004, at 4:00 p.m. in the afternoon, the same day of the alleged damage to Plaintiff's inventory, he called his local insurance agent to report the damage, but was told to call back on the following Monday. (Docket No. 45, Exh. 1, at 15) ("[F]our o'clock I called, if I am not wrong, my insurance agent Bob Schmidt and reported it. He said, 'When you come back in on Monday to work, just give me a call, and we will go from there' "). Mr. Gabbay further stated that he called his local agent, Bob Schmidt, again that following Monday, but due to the amount of damage in the surrounding area, Mr. Schmidt could not respond to Gabbay's request until "a couple months later." (*Id.*) ("[W]hen we called on Monday, everybody was busy with everything that was happening in Carnegie . . . so we just waited patiently. A couple months later, they came to our place, Bob Schmidt, and then we started getting everything rolling at that time"). Accordingly, based on Mr. Gabbay's testimony, a genuine issue of fact exists as to whether or not Plaintiff met its obligation under this provision in that the parties dispute when Plaintiff actually made its claim for

---

[12] Defendant relies on the section entitled "Legal Action Against Us", which provides that:

No one may bring a legal action against us under this insurance unless:
**a.** There has been full compliance with all of the terms of this insurance; and
**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Docket No. 32, Exh. 13, at 4) (emphases in original).

coverage.

Second, as to the alleged neglect, Mr. Gabbay testified in his deposition that, on the date of the alleged rain damage (i.e., September 17, 2004), some inventory was moved from the sixth floor of the building and the damaged merchandise was kept on the fifth and sixth floors for the insurance adjuster to view. (Docket No. 45, Exh. 1, at 17-18) ("Whatever had damage, we just left on the fifth and sixth floor of the building for the adjuster to see"). Further, Gabbay implied that the inventory was damaged beyond use at the time the damage occurred:

> A. The boxes got wet. The weather was getting to the boxes. We got into them a little bit later. We took some of them out of the boxes. We had so much merchandise there. It was sellable merchandise. Some of it we sold.
> Q. After you saw that there was water leaking through the roof, did you move some material to a safer location?
> A. Sure. Everything that didn't get damaged at that time, we took it Monday from the front of the fifth floor and sixth floor to the third and fourth floor. Nothing was affected there.

(Docket No. 45, Exh. 1, at 18). While Defendant has offered evidence that there was damage to the roof prior to "Hurricane Ivan" hitting on September 17, 2004, in the form of affidavits from the claims adjuster and the roofing inspector, Defendant has not offered any evidence to show that the there was further damage to the claimed inventory thereafter as a result of the inventory sitting in boxes as opposed to the initial water damage occurring on the date of the rain storm. Accordingly, a genuine issue of material fact exists as to whether there was further damage to the inventory at issue and whether there was further leaking on the damaged property.[13]

C.     Conclusion as to coverage

---

[13]

Moreover, the Court opines that because the damage to the inventory was caused by water, it reasonably follows that it would be difficult to preserve said inventory that sustained water damage in such a way that it would be fully protected from further damage due to molding.

Based on the foregoing, the Court finds that while Plaintiff's claimed inventory is potentially covered under the policy, genuine issues of material fact remain as to whether the damage to Plaintiff's covered property (i.e., inventory) was "caused by or resulting from a Covered Cause of Loss". Factual disputes also remain as to the potential applicability of the exclusions discussed above. *See supra*. Accordingly, the Court denies Defendant's motion for summary judgment to the extent that it addresses coverage and likewise denies Plaintiff's motion for partial summary judgment as to coverage.

II.    *Bad Faith*

Defendant argues that summary judgment should be granted as to the issue of bad faith.

The applicable statutory provision provides:

> § 8371. Actions on insurance policies
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371. Although the statute does not define "bad faith," the Pennsylvania courts have set forth two elements necessary to prove a section 8371 bad faith claim:

> (1) the insurer did not have a reasonable basis for denying benefits under the applicable insurance policy; and
> (2) the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.

*Employers Mut. Cas. Co. v. Loos*, 476 F.Supp.2d 478, 489-490 (W.D. Pa. 2007) (citing *Terletsky v. Prudential Property*, 649 A.2d 680, 688 (1994)); *see also Adamski v. Allstate Insurance Co.,* 738

A.2d 1033 (Pa. Super. 1999). "While the alleged bad faith need not be the literal action of denying an insured's claim, 'the essence of a statutory bad faith claim under Pennsylvania law is the unreasonable and intentional (or reckless) denial of benefits.' " *Loos,* 476 F.Supp. 2d 478 (W.D. Pa. 2007) (quoting *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)). In order to survive a dispositive motion as to bad faith, a plaintiff must meet the substantial burden of showing by clear and convincing evidence that said elements are met. *Kearns v. Minnesota Mut. Life Ins. Co.,* 75 F. Supp.2d 413 (E.D. Pa. 1999). "Accordingly, the plaintiff's burden in opposing a summary judgment motion is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D. Pa. 1999).

In this case, Defendant has offered evidence that it provided Defendant with a timely reservation of rights letter. Furthermore, it has offered evidence that it investigated the claims reported by Plaintiff through the use of a claims agent and roofing specialist. Defendant contends that, as a result of this investigation, Defendant made a reasonable and good faith denial of Plaintiff's claims. Furthermore, Plaintiff has offered no evidence to rebut Defendant's evidence of a reasonable attempt to investigate and a reasonable decision based upon that investigation. Defendant has also offered evidence that it promptly communicated its denial of Plaintiff's claim and the reason for its denial to Plaintiff. Based on the evidence offered by Defendant, namely the affidavits of the claims adjuster and roofing inspector and correspondence sent to Plaintiff, Defendant had a reasonable basis for denying Plaintiff's claim. Furthermore, in consideration of the reservation of rights letter and letter to Plaintiff denying its claim, Defendant reasonably communicated with Plaintiff. Because Plaintiff has offered no evidence, let alone clear and convincing evidence that Defendant's denial

was based on an unreasonable basis, Defendant's motion as to the issue of bad faith is granted.[14]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion for summary judgment and denies Plaintiff's motion for partial summary judgment. An appropriate Order to follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 21, 2007

cc:     All counsel of record.

---

[14]

The Court notes that while Plaintiff filed its own dispositive motion as to coverage and thus addressed the issues raised by Defendant in its dispositive motion as to coverage, Plaintiff did not file a response to Defendant's motion as to bad faith. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party"); *see also* W.D. Pa. Local Rule 56.1(C)(2); Practices and Procedures of Judge Nora Barry Fischer Effective July 1, 2007, at II.E(ii).